IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.      ) | Criminal No. 12-107 |
| ) | |
| EARL WARNER         ) | |

**GOVERNMENT'S RESPONSE TO MOTION TO**
**SUPPRESS DEFENDANT'S STATEMENT**

AND NOW comes the United States of America, by its attorneys, David J. Hickton, United States Attorney for the Western District of Pennsylvania, and Carolyn J. Bloch, Assistant United States Attorney for said district, and submits the following response to the defendant's Motion to Suppress Defendant's Statement:

The defendant seeks exclusion of statements he made during an interview at the Mercer Barracks of the Pennsylvania State Police on April 3, 2012, with Special Agent (SA) Thomas Carter and Pennsylvania State Police (PSP) Trooper Troy Owen. He claims that the statements violated Miranda v. Arizona, 384 U.S. 436 (1966), and were involuntary. The government responds that the drastic remedy of suppression is to be reserved for instances of official wrongdoing. With regard to statements, this means law enforcement application of coercion, that is

1

either a failure to observe the <u>Miranda</u> requirements in a custodial setting or, regardless of custody, some action wherein the defendant's will was overborne.

### **FACTUAL BACKGROUND**

The April 3, 2012, interview of the defendant involved no official wrongdoing. It was arranged by Trooper Owen by telephone, and the defendant's mother brought him to the Mercer Barracks of the PSP at approximately 1:00 p.m., where he was met by Trooper Owen in the waiting room. Defendant Warner voluntarily followed Trooper Owen to an office for purposes of the interview with him and Special Agent Carter. Defendant Warner was introduced to Agent Carter and was seated. The defendant's mother remained in the waiting room.

Defendant Warner was told he was not under arrest, that he was free to leave at any time, and that he would not be arrested following the conclusion of the interview. He was then advised that the FBI and PSP were conducting a joint investigation into the sexual exploitation of minor children and the taking of pictures of these children, specifically young girls under the age of 12 from Mercer, Pennsylvania. Defendant Warner was advised that his name had come up in the investigation as a person who had engaged in the taking of photographs of young girls. No weapons were displayed, no restraints were used, no threats were made, and no effort was

made to intimidate him.  Defendant Warner was interviewed for approximately forty-five minutes to an hour in a private office measuring twelve feet by eighteen feet.  The defendant was never handcuffed or restrained in any way.  At all times there was a visual and a physical clear path to the door, as both Agent Carter and Trooper Owen remained seated on the side of the desk opposite to the defendant and the door.  At no time prior to or during the interview did Warner ask for a lawyer.  Warner never asked for food or drink, or to use the restroom.  The defendant was responsive to questions posed by the investigators.  At first, he offered false answers.  Then, after being shown a few of the subject videos, defendant Warner provided more truthful responses.  Near the conclusion of the interview, the defendant stated that he had had enough questioning and desired to leave.  Warner was thanked for his cooperation and was permitted to leave the office.  He departed the PSP barracks with his mother.

## THE LAW

A.  Custody

Although the initial warnings given to Warner did not strictly comply with the Miranda formula, no Miranda warnings were required since Warner was not in custody.

> In Miranda v. Arizona, . . . the Court held that the Fifth Amendment privilege against self-incrimination prohibits admitting statements given by a suspect during "custodial interrogation" without a prior warning. Custodial interrogation means "questioning initiated by law enforcement officers after a person has been taken into custody . . . ." The warning mandated by Miranda was meant to preserve the privilege during "incommunicato interrogation of individuals in a police-dominated atmosphere." That atmosphere is said to generate "inherently compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely." (citations omitted.)

Illinois v. Perkins, 496 U.S. 292, 296 (1990) (undercover law enforcement officer posing as inmate need not give Miranda warnings to incarcerated suspect before asking questions that may elicit an incriminating response). In Miranda, "custody" is defined as the deprivation of "freedom of action in any significant way." 384 U.S. at 444. See also Stansbury v. California, 511 U.S. 318, 322 (1994) (per curiam) (ultimate inquiry is "whether there [was] a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest"); United States v. Bennett, 329 F.3d 769, 774 (10th Cir.

4

2003) (suspect must be "in custody" and questioning must meet legal definition of "interrogation" before Miranda applies); United States v. Willaman, 437 F.3d 354, 360 (3d Cir. 2006) (no custody because defendant was questioned at home, told he could leave and was not intimidated or restrained).

In United States v. King, 604 F.3d 125 (3d Cir. 2010), the Court addressed the custody issue where, following the seizure of a computer from his residence, Richard King was interviewed at the Williamsport FBI office and admitted to performing oral sex on a minor, traveling interstate for that purpose, conducting online relationships with other young girls, and having a long-standing interest in sexual contact with young girls that began with his own daughter.

In finding that Miranda warnings were unnecessary since King was not in custody during his interview, the Court relied on five factors cited in United States v. Willaman, supra, 437 F.3d at 359-60 ("(1) whether the officers told the suspect he was under arrest or free to leave; (2) the location of physical surroundings of the interrogation; (3) the length of the interrogation; (4) whether the officers used coercive tactics such as hostile tones of voice, a display of weapons, or physical restraint of the suspect's movement; and (5) whether the suspect voluntarily submitted to questioning").  The Court

found that although factors 2 and 3 favored King, factors 1, 4 and 5 all favored the government.

See also United States v. Leese, 176 F.3d 740 (3d Cir. 1999), where the district court's suppression of a non-Mirandized statement taken by postal inspectors in the postmaster's office was reversed since the questioning did not amount to custodial interrogation.  There was no formal arrest or restraint on freedom of movement; defendant was told she was not under arrest before the questioning began; she was informed that when the questioning concluded the inspectors would return to Harrisburg and she would not be going with them; and, on two occasions during questioning, defendant's requests to speak privately with a union steward were honored.

    B.    Voluntariness

Although the voluntariness of a defendant's statement is a separate inquiry from the issue of Miranda custody, it too is directed at measuring police coercion.  In Lego v. Twomey, 404 U.S. 477, 489 (1972), the Court ruled that "[W]hen a confession challenged as involuntary is sought to be used against a criminal defendant at his trial, he is entitled to a reliable and clear-cut determination that the confession was in fact voluntarily rendered.  Thus the prosecution must prove at least by a preponderance of the evidence that the confession was voluntary."

In Schneckloth v. Bustamonte, 412 U.S. 218 (1973), the Court found that to determine the voluntariness of a confession, the Court must assess the totality of the circumstances to determine if a defendant's will was overborne. Id. at 226. Factors to be considered include:

> The youth of the accused; his lack of education or low intelligence, the lack of any advice to the accused as to his constitutional right; the length of detention, the repeated and prolonged nature of questioning; and the use of physical punishment such as the deprivation of food or sleep.

Id. The Court articulated the ultimate test of voluntariness in Anglo-American courts for 200 years: "Is the confession the product of an essentially free and unconstrained choice by its maker." Id. at 225.

The government recognizes that an evidentiary hearing is necessary for this Court to resolve the custody and voluntariness issues. The government submits that at no time during the interview did the investigators' conduct or questioning undermine defendant Warner's ability to exercise his free will. As such, the government further submits that following the evidentiary hearing scheduled for July 18, 2013,

7

the Court will be compelled to deny the defendant's Motion to Suppress.

                                        Respectfully submitted,

                                        DAVID J. HICKTON
                                        United States Attorney

                                        /s/ Carolyn J. Bloch
                                        CAROLYN J. BLOCH
                                        Assistant United States Attorney
                                        700 Grant Street, Suite 4000
                                        Pittsburgh, Pennsylvania 15219
                                        (412) 644-3500 (Phone)
                                        (412) 644-4549 (Fax)
                                        Carolyn.Bloch@usdoj.gov
                                        PA ID No. 53430