IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA


UNITED STATES OF AMERICA,

       Plaintiff,

          vs.

EARL D. WARNER,

       Defendant.

_____

Criminal Action

No. 12-107


    EXCERPT of transcript of proceedings on January 21, 2014,
United States District Court, Pittsburgh, Pennsylvania,
before Arthur J. Schwab, District Judge


APPEARANCES:

For the Government:         Carolyn J. Bloch, Esq.


For the Defendant:          David B. Chontos, Esq.


Court Reporter:           Richard T. Ford, RMR, CRR
                           6260 U.S. Courthouse
                           Pittsburgh, PA  15219
                           (412) 261-0802


Proceedings recorded by mechanical stenography; transcript
produced by computer-aided transcription

1          (After lunch recess; on record in open court.)

2                THE COURT:  Members of the jury, now that you have

3    been sworn I will give you some preliminary instructions to

4    guide you in your participation in this trial.

5                It will be your duty to find the facts solely from

6    the evidence presented.  You and you alone are the judges of

7    the facts.  You will then have to apply the law to those facts

8    as the Court instructs you.  You must follow the law whether

9    you agree with it or not.

10               Nothing the Court may say or do during the trial is

11   intended to indicate or should be taken by you as indicating

12   what your verdict should be.

13               The evidence from which you will find the facts

14   consists of testimony of the witnesses, documents, and other

15   things received into evidence as exhibits, and any facts that

16   the parties agree to or stipulate to or that the Court may

17   instruct you to find.

18               Certain things are not evidence and must not be

19   considered -- and you must not consider them, and I will list

20   them for you now.

21               First, the indictment is not evidence.

22               Second, statements, arguments, and questions by the

23   lawyers are not evidence.

24               Three, objections to questions are not evidence.

25   Lawyers have an obligation to their clients to make objections

1    when they believe evidence being offered is improper under the

2    Rules of Evidence.  You should not be influenced by the

3    objection nor by the Court's ruling on the objection.  If the

4    objection is sustained, ignore the question.  If it is

5    overruled, treat the answer like any other.

6            If you're instructed that some piece of evidence is

7    received for a limited purpose, you must follow that

8    instruction.

9            Four, testimony that the Court has excluded or told

10   you to disregard is not evidence and must not be considered.

11   Anything you may have seen or heard outside the courtroom is

12   not evidence and must be disregarded.  You are to decide this

13   case solely on the evidence presented in this courtroom.

14           So I have told you now what is not evidence.  There

15   are two kinds of evidence:  Direct and circumstantial.

16           Direct evidence is direct proof of a fact, such as

17   the testimony of an eyewitness.

18           Circumstantial evidence is proof of facts from

19   which you may infer or conclude that other facts exist.

20           I will give you further instructions on these as

21   well as other matters at the end of the case.  But keep in

22   mind you may consider both kinds of evidence.

23           It is up to you to decide which witnesses to

24   believe, which witnesses not to believe, and how much of any

25   witness' testimony to accept or reject.  I will give you some

1   guidelines for determining the credibility or believability of

2   witnesses at the end of the case.

3          You as jurors must decide this case based solely on

4   the evidence presented here within the four walls of this

5   courtroom.  This means that during the trial you must not

6   conduct any independent research about the case, the matters

7   in the case, and the individuals or corporations involved in

8   the case.  In other words, you should not consult dictionaries

9   or reference materials, search the Internet, website, blogs,

10  or use any other electronic tools to obtain information about

11  the case or to help you to decide the case.  Please do not try

12  to find out information from any source outside the confines

13  of this courtroom.

14         Until you retire to deliberate, you may not discuss

15  this case with anyone, not even among your fellow jurors.

16  After you retire to deliberate, you may begin discussing the

17  case with your fellow jurors, but you cannot discuss the case

18  with anyone else until you have returned a verdict and the

19  case is at an end.

20         I hope that all of you find this case interesting

21  and noteworthy.  I know that many of you use cell phones,

22  BlackBerrys, Internet, and other tools of technology.  You

23  also must not talk to anybody about the case, as I mentioned,

24  or use these tools to communicate electronically to anyone

25  about the case.  This includes your friends and your family.

1              You may not communicate with anyone about the case

2    on your cell phone, through email, BlackBerry, iPhone, text

3    messaging, or through any blog or website, through any

4    Internet chat room, or by way of any social networking sites,

5    including Facebook, MySpace, Twitter, LinkedIn, or YouTube.

6              You may not receive any information about the case

7    from any source other than what's presented in this courtroom

8    concerning the case.  This means do not Google any party or

9    attorney or court personnel in the case.  Do not conduct any

10   research on the Internet about the case or the parties or the

11   facts involved in the case.  You may not blog about the case

12   or to events surrounding the case or your jury service.  You

13   may not tweet about anything to do with the parties, events,

14   or facts of the case or your jury service in the case.

15             Do not send any emails to anyone conveying your

16   jury experience or information about the case.

17             In the jury room do not use your cell phone at

18   recess or lunch to call anyone to ask questions about the

19   issues in the case or to report any facts about the case.

20             You may not use Facebook, YouTube, or any other

21   social network on the Internet to discuss your jury service or

22   the issues in this case or the people involved, including the

23   attorneys.

24             Do not attempt to re-create by experiment at home

25   any evidence you may hear as testimony in the courtroom.

1          Failure to abide by these instructions could result

2    in your being found in contempt of court or causing the trial

3    to end.

4          During the course of the trial you will hear from

5    expert witnesses.  An expert witness is someone who may have

6    knowledge in some technical, scientific, or other specialized

7    area.  When such knowledge or experience may be of assistance

8    to you in understanding some of the evidence or in determining

9    a fact, an expert witness is permitted to state an opinion as

10   to the matter in which he or she claims to be an expert.

11         Merely because such a witness has expressed an

12   opinion, however, does not mean that you have to accept that

13   opinion.  The same as with any other witness testimony, it is

14   up to you to decide whether to rely on it and how much weight

15   to give it.

16         The Defendant has pled not guilty to the offenses

17   charged.  Defendant is presumed to be innocent.  He starts the

18   trial with a clean slate, with no evidence against him.  The

19   presumption of innocence stays with him unless and until the

20   Government presents evidence that overcomes that presumption

21   by convincing you that Earl D. Warner is guilty of the

22   offenses charged beyond a reasonable doubt.

23         The presumption of innocence requires that you find

24   Earl D. Warner not guilty unless you are satisfied that the

25   Government has proved guilt beyond a reasonable doubt.  The

1   presumption of innocence means the Defendant has no burden or

2   obligations to present any evidence at all or to prove that he

3   is not guilty.

4         The burden or obligation of proof is on the

5   Government to prove that Earl D. Warner is guilty, and that

6   burden stays with the Government throughout the trial.

7         In order for you to find the Defendant guilty of

8   the offenses charged, the Court -- the Government must

9   convince you that the Defendant is guilty beyond a reasonable

10  doubt.  That means the Government must prove each and every

11  element of each offense charged beyond a reasonable doubt.

12        The Defendant may not be convicted based upon

13  suspicion or conjecture, but only on evidence proving guilt

14  beyond a reasonable doubt.

15        Proof beyond a reasonable doubt does not mean proof

16  beyond all possible doubt or to a mathematical certainty.

17  Possible doubts or doubts based on conjecture or speculation

18  are not reasonable doubts.  A reasonable doubt is a fair doubt

19  based on reason, logic, common sense, or experience.  A

20  reasonable doubt means a doubt that would cause an ordinary

21  reasonable person to hesitate in acting in matters of

22  importance in his or her own life.  It may arise from the

23  evidence or from the lack of evidence or from the nature of

24  the evidence.

25        If after hearing all the evidence you are convinced

that the Government has proved Earl D. Warner guilty beyond a reasonable doubt, you should return a verdict of guilty as to the Defendant.  However, if you have a reasonable doubt as to an element of an offense, then you must return a verdict of not guilty as to the Defendant for that offense.

I want to speak about your conduct as jurors. First, as I have instructed you before, during the trial you are not to discuss the case with anyone or permit anyone to discuss it with you.  Until you retire to the jury room at the end of the case to deliberate your verdict you simply are not to talk about the case, even among yourselves.

Second, do not read or listen to anything touching on the case in any way.  If anyone should try to talk to you about it, bring it to the Court's attention promptly.

Third, do not try to do any Internet or other research or make any other investigation about the case on your own.

Finally, do not form any opinion until all the evidence is in.  Keep an open mind until you start your deliberations at the end of the case.

If you wish, you may take notes on the paper provided in your binders.  If you decide to take notes, be careful not to get so involved in note taking that you become distracted from the ongoing proceedings.

Additionally, there may be a tendency to attach

1   undue importance to matters that one has written down.

2   However, some testimony that is considered unimportant at the

3   time presented and, thus, not written down may take on a

4   greater importance later in the trial in light of all the

5   evidence presented.

6             Therefore, you are instructed that your notes are

7   only a tool to aid your own individual memory and you should

8   not compare your notes with other jurors in determining the

9   content of any testimony or in evaluating the importance of

10  any evidence.

11            Your notes are not evidence and are by no means a

12  complete outline of the proceedings or a list of the

13  highlights of the trial.  Above all, your memory should be

14  your greatest asset when it comes time to deliberate and

15  rendering a decision in this case.

16            You may take -- you may not take your notes outside

17  the courtroom.  Before you leave the courtroom for any reason,

18  your notes must be left in the jury room.  When you leave for

19  the night, your notes will be secured and not read by anyone.

20  At the end of the trial your notes will be collected and

21  destroyed.  No one -- not the attorneys, my staff, newspaper

22  reporters, or me -- will read your notes.

23            Additionally, you will not be permitted to ask

24  questions of the witnesses or the attorneys during the trial.

25  Therefore, please do not interrupt the lawyers during their

1   examination of a witness or otherwise.

2          If, however, you are unable to hear a witness or a

3   lawyer, please raise your hand and the Court will see that the

4   situation is corrected.

5          I am going to speak about the course of the trial.

6   The trial will now begin.  The prosecutor will make an opening

7   statement, which is simply an outline to help you understand

8   the evidence as it comes in.  Next the defense attorney may,

9   but does not have to, make an opening statement.  Remember,

10  opening statements are not evidence.

11         The Government will then present its witnesses.

12  Counsel for the Defendant may cross-examine the witnesses.

13         Following the Government's case the Defendant may,

14  if he wishes, present witnesses which the Government -- which

15  the prosecution may cross-examine.

16         After all the evidence is in the attorneys will

17  present their closing arguments to summarize and interpret the

18  evidence for you, and the Court will instruct you on the law.

19         After that, you will retire to deliberate on your

20  verdict, and you will have available all the exhibits that

21  were admitted into trial.  However, a transcript of the trial

22  testimony will not be available to you.  Therefore, please pay

23  close attention to the testimony that is admitted during the

24  trial.  Your deliberation and verdict must be based on your

25  collective recollection of that testimony during trial,

```
 1   without the aid of a written transcript.

 2            We have an additional oath for you now to take.

 3            THE DEPUTY CLERK:  Please stand and raise your

 4   right hand.  Do each of you solemnly swear or affirm that you

 5   will follow the Court's instructions, which are that until the

 6   case is over you will not access in any way the news about

 7   this case, either by Internet, by print media, by radio or by

 8   television, and that you will not communicate with any others

 9   about this case, including not talking about it in person or

10   by phone, not writing, blogging, or tweeting about it, and not

11   using any social networking site -- examples of which are

12   Facebook, MySpace, LinkedIn, and Twitter -- to discuss any

13   aspects of this case or your work as a juror.  If you agree,

14   please say I do.

15            THE JURY:  I do.

16            THE DEPUTY CLERK:  Thank you.  You may be seated.

17            THE COURT:  Are you ready for your opening

18   statement?

19            MS. BLOCH:  I want to apologize up front, the woman

20   that's going to cue up the computer, you had indicated we

21   would start at approximately 3:30, and I asked her to be here

22   at 3, but Agent Carter has already left.  I believe she will

23   be here momentarily.

24            THE COURT:  Okay.  Ladies and gentlemen, while we

25   are waiting, I think what we are going to do today is we are
```

1    going to have the opening statements, then we are going to

2    break for the day so everyone can get home before the traffic

3    builds up and the weather.

4             We will start tomorrow at 9:30.  There are

5    logistical reasons for that.  I am here at 7, the cafeteria

6    opens at 7, so if you want to see what the cafeteria looks

7    like, you can come as you wish.  But we start at 9:30 because

8    of logistical reasons, not because we are not here early.

9             We will break tomorrow at lunch from 12:30 until

10   1:30 because I have a Board of Judges meeting at that time,

11   and we will figure out what time we are going to close

12   tomorrow.  If there is any particular travel concerns you have

13   or daycare issues or something like that, be sure to mention

14   it to my deputy clerk and we will try to work with you in that

15   regard.

16            MR. CHONTOS:  Judge, can we approach for a second?

17          (On record at sidebar as follows.)

18            MR. CHONTOS:  Judge, we might have talked about

19   this, but Carolyn plans on, in her opening, showing the video

20   clip with audio and there is another video clip.  Is that

21   going to be broadcast to the people in the audience?  That's

22   my issue.

23            MS. BLOCH:  It will.  It will only be to the extent

24   that they can see it on these screens.

25            THE COURT:  Are we talking about the video being

1  broadcast?

2           MR. CHONTOS:  Right.

3           THE COURT:  Well, do you have any thought?  Is

4  there anybody in the audience that needs to watch this?

5           MS. BLOCH:  I mean, I believe that most of the

6  people in the courtroom are the Defendant's family members.

7  Certainly they have the -- including his daughter.  She

8  certainly doesn't need to be in here, but I have no control

9  over that.

10           THE COURT:  My question is different.  My question

11  is --

12           MS. BLOCH:  Is there anyone who needs to see it?

13           THE COURT:  Right.  Because we can turn all the

14  screens around.  Can we shut off the attorney's screens?

15           MS. BLOCH:  Well, the way we fashioned it is, as

16  Lisa indicated the other day, last Friday --

17           THE COURT:  Lisa is the law clerk for the record.

18           MS. BLOCH:  Correct, I am sorry.

19           If we turn the one that the attorney posing the

20  questions, or in this case opening, so that it's not -- so

21  that I can see it, but no one in the courtroom can, obviously

22  Mr. Chontos has a screen, as does Government counsel and the

23  paralegal who's assisting and bringing up the images.  So to

24  the extent that the members -- the guests can see what's on

25  those screens, yes, they will.

1          THE COURT:  Why can't we -- why can't these two

2     monitors on defense counsel table be turned away from the

3     audience?

4          MS. BLOCH:  They certainly can if Mr. Chontos

5     doesn't object to that.

6          MR. CHONTOS:  Judge, I have no problem.

7          THE COURT:  Then why can't we turn the two on the

8     Government's side, why can't we turn those toward the Court.

9          MS. BLOCH:  Well, we probably can at this point,

10    but you realize as trial proceeds there's going to be

11    images --

12         THE COURT:  That wasn't --

13         MS. BLOCH:  For today's purposes, certainly we can

14    turn them.

15         THE COURT:  Why don't we do that and see what that

16    looks like.  Okay?

17         MR. CHONTOS:  Yes.

18         THE COURT:  But the audio will obviously be heard

19    by everybody.

20         MS. BLOCH:  For whatever it's worth, this is just a

21    short piece of it.

22         MR. CHONTOS:  So it is not the 4:14.

23         THE COURT:  Does that solve your problem or not?

24         MR. CHONTOS:  Yes.

25         THE COURT:  So do you want the --

1          MR. CHONTOS:  We are going to turn them around,

2     even though it is a shorter version, it's not the 4 minutes 14

3     seconds.

4          THE COURT:  I need to know when, in light of us

5     doing this, I think the law requires me to give a cautionary

6     instruction prior to the viewing of the evidence one time and

7     following the evidence one time.  I understand defense counsel

8     does not want me to continually do the cautionary instructions

9     every time the evidence is shown.  Correct?

10          MR. CHONTOS:  Right, I do want that, but it seems

11     as though the Court's inclination is to, even before opening,

12     to give that instruction.  Or are you jumping ahead?

13          THE COURT:  No, I want to know your collective

14     wisdom as to when is the one time I read the cautionary

15     instruction relating to prior to viewing child pornography,

16     which seems like I either do it now or I do it the first time

17     we get an extensive showing.  So what's your collective

18     wisdom?

19          MR. CHONTOS:  Judge, it should not be done now.  It

20     should not be done when we have that first extensive showing

21     of that.  I think that to do that calls unnecessary level of

22     attention to this piece of evidence and we don't want that.

23          THE COURT:  Okay.  When are you suggesting that I

24     read it?

25          MR. CHONTOS:  Not at all.  Never.

1            THE COURT:  What's your view?

2            MS. BLOCH:  Well, as I indicated in my written

3    notice to the Court following our status conference, I looked

4    back into both the Cunningham case as well as into Finley.  It

5    does appear that an appellate court when looking upon the

6    trial proceedings looks highly upon some form of cautionary

7    instruction being provided to the jury when they're viewing

8    images of this type.

9            I don't believe those necessarily -- and your law

10   clerk is probably more versed in this than even I -- it

11   necessarily requires specific instructions both before and

12   after.  It was obviously our recommendation that the Court do

13   that.  I don't know that there is case law that would require

14   that of the Court.

15           I do think, however, that for purposes of being

16   abundantly cautious on the part of the Court, I recognize the

17   Defendant is objecting to it, but I -- it is somewhat -- I

18   mean, I think it cuts -- you know, I hate to say it's

19   disingenuous, but he doesn't want to cause alarm, yet the

20   trial record will seem deficient if there isn't some sort of

21   cautionary instruction provided.

22           MR. CHONTOS:  Judge, I see that instruction as no

23   different than at the end of the case when you instruct the

24   jury, if Mr. Warner doesn't testify, about the adverse

25   inference.  I could waive that.

1          THE COURT:  The problem is --

2          MR. CHONTOS:  It's just the same.

3          THE COURT:  Okay.  The problem is those two cases

4   certainly seemed to imply that instructions need to be given.

5   Obviously it is another question as to whether that can be

6   waived.

7          So what I would ask is whenever you are going to

8   first show a lengthy portion of the child pornography evidence

9   that you tell me and then I will decide whether to give the

10  instruction or not.  We will look further into whether the

11  Defendant can waive the right to have this cautionary

12  instruction.  It is my understanding you have had sufficient

13  discussions with the Defendant and he knowingly, willingly --

14  is willing to waive the cautionary instruction.

15         MR. CHONTOS:  Yes.

16         THE COURT:  Thank you.

17      (Back on record in open court.)

18         THE COURT:  Lisa, would you check the laptop,

19  please.

20         MS. BLOCH:  She is actually the person who's

21  pulling it up.

22         THE COURT:  I understand that.  So then I would

23  like to have her slide over a little bit catercorner, please.

24  And then everyone on my left, I want you to move over, please.

25         My understanding is the two back monitors are off,

1   correct?

2           MS. BLOCH:   That's correct, Your Honor.

3           THE COURT:   Okay.  Are you ready to begin, ma'am?

4           MS. BLOCH:   I am, Your Honor, thank you.

5           THE COURT:   Thank you.

6           MS. BLOCH:   This case is about a 53-year-old man

7   who sexually abused and exploited young, vulnerable children

8   40 years his youth.  These were young girls living in and

9   around his neighborhood and who he then produced images, still

10  images and videos, depicting their sexual exploitation for his

11  sexual pleasure.

12          Sitting as jurors in this case will certainly be

13  difficult and disturbing at times as you view the images and

14  listen to the testimony that's offered through this trial.  It

15  is those images, however, which are the core of the present

16  charges and the core of this case.

17          My name, again, is Carolyn Bloch and I am an

18  Assistant United States Attorney.  I am the Assistant

19  US Attorney assigned to this case.  And seated beside me is

20  Special Agent Thomas Carter of the FBI who has served as the

21  lead investigator on this particular case.  Behind us is a

22  paralegal from my office, Diane Wikert, who will assist me

23  today and throughout the trial in presenting some of the

24  evidence that the Government intends to offer.

25          The evidence to be presented over the course of the

next couple of days will reveal to you that during the summer
of 2011, behind the walls of this two-story apartment on
Brandy Springs in Mercer, Pennsylvania, where Mr. Warner lived
with his 11-year-old daughter alone, he used a Canon digital
camera to photograph and videotape his daughter's friends,
three children, one named Margie, one named Faith, and one
named Harley, each of whom was 11 or 12 years old at the time
of the pending charges.

       The photos and videos that he produced included
images that depict their naked genitalia, sometimes in a
particularly graphic way.  Some photographs and videos also
include the depiction of his hand touching Faith and sometimes
depict his voice directing her.

       This case started for law enforcement when Agent
Carter received information in December, 2012, from the
San Diego FBI office that in the course of an ongoing
investigation out there they discovered photographs of young
naked girls that they believed to be living in the Mercer,
Pennsylvania, area; and that they believed as well that the
photographs were taken by a man they identified as Armando
Cruz, also of Mercer, Pennsylvania.

       With the assistance of the Pennsylvania State
Police and school personnel, Agent Carter will tell you that
he quickly identified the girls depicted in the photographs as
Margie, Faith, and Harley, as well as Earl Warner's daughter.

 1          Agent Carter met with each of the victims and when

 2     he had enough evidence obtained, he put together a search

 3     warrant which was issued by the Court and he executed that

 4     warrant on Cruz's residence with other agents from the FBI and

 5     troopers from the Pennsylvania State Police on February 15th

 6     of 2012.

 7          Cruz returned home that day right about the time

 8     the search was wrapping up, and at that time was arrested on

 9     charges brought by the Mercer County District Attorney's

10     office.

11          While the search was underway, Agent Carter headed

12     to Warner's house.  He had just enough information at that

13     point to look for Mr. Cruz there.  He met with Earl Warner

14     briefly.  Agent Carter will testify about the discussion they

15     had and he will tell you that Earl Warner explained that Cruz

16     was a good friend and that they had played computer games at

17     each other's homes on a fairly regular basis.  Agent Carter

18     will relate that Mr. Warner in fact told him that Cruz had

19     been to his home twice the evening before the search and this

20     arrest.

21          In fairly short order after federal criminal

22     charges were brought charging Mr. Cruz with production of

23     child pornography, and then later in March that investigation

24     of Mr. Cruz further expanded to include Earl Warner.  That

25     expansion occurred when Mr. Cruz agreed to be interviewed by

1  the FBI.

2         You will hear testimony that Cruz explained that he

3  and Mr. Warner were friends and that he knew that Warner, like

4  he, was taking sexually exploitive photographs and videos of

5  Margie, Faith, and Harley, and that he had in fact seen some

6  of these images and videos on Mr. Warner's laptop computer.

7         He will further tell you that approximately a week

8  before he was arrested, without Warner knowing, Cruz

9  downloaded images and videos he could quickly find on

10 Mr. Warner's computer to a thumb drive that he had inserted,

11 and then later at his own home took all of the images that he

12 had downloaded off of Mr. Warner's computer and transferred

13 them to two disks.  And then he took these two disks and he

14 hid them in a secret spot in a building at the job where he

15 worked.

16        The Government's evidence will establish that Agent

17 Carter then retrieved these two disks from the spot that Cruz

18 had hidden them and then -- and the contents were then

19 reviewed by him as well as other agents and law enforcement

20 officers.

21        Mr. Cruz, having -- rather, Agent Carter having

22 reviewed the images relevant to the Cruz investigation

23 immediately recognized Margie, Faith, and Harley in these two

24 images of child pornography.  But what he also will testify

25 to, what was different about them was he could also recognize

1    that the backdrop to all of these images and videos were in

2    fact the inside of Defendant Warner's home and not Mr. Cruz's.

3            The Government will present this and other evidence

4    to prove the seven offenses charged in the superseding

5    indictment.  Six of those charges relate to -- rather, six of

6    the counts, the first six counts charged that Mr. Warner

7    unlawfully used, persuaded, induced, enticed, or coerced a

8    minor, that is a child under the age of 18 years, to engage in

9    sexually explicit conduct for the purpose of producing a

10   visual depiction of the conduct, and that he did so using

11   materials that had been mailed or shipped or transported in or

12   affecting interstate or foreign commerce.

13           The seventh charge -- rather, Count 7 of the

14   indictment charges Earl Warner with unlawful possession of

15   visual depictions, the production of which involved the use of

16   minors engaging in sexually explicit conduct and, again, which

17   were produced with materials which had been transported in

18   interstate or foreign commerce.

19           As Agent Carter's investigation continued to

20   develop, he obtained a search warrant for Warner's residence,

21   which was then later executed on April 9th of 2012, not too

22   long after the recovery of the particular disks.

23           The Government will present evidence seized during

24   that search that establishes that Earl Warner is the person

25   who produced the images and videos that are charged or

1    referenced in this particular superseding indictment.

2             That evidence includes the Canon PowerShot SX120 IS

3    digital camera that was used to take the pictures and videos,

4    and two SanDisk memory cards used to store the image and

5    videos that fit into that Canon camera.  All of which, that is

6    the camera and the two memory cards, having been found in

7    Mr. Warner's living room during the execution of the search

8    warrant.

9             The evidence will also include photographs that

10   Agent Carter and his fellow agents took of the search site

11   showing that the child pornography in question was in fact

12   produced inside the various rooms of Earl Warner's home -- his

13   living room, his dining room, his bathroom, his master

14   bedroom.

15            In order to prove the interstate or foreign

16   commerce nexus that the Government must establish, the

17   Government will present evidence that the Canon camera, the

18   two SanDisk memory cards, and an Acer computer, laptop

19   computer, on which the Defendant stored some of these videos

20   and images, all were manufactured in China or originated in

21   China.  As such, the equipment that he was using -- the

22   camera, the memory cards, the computer -- to produce, store,

23   and retain these images were all shipped and/or transported in

24   both foreign and interstate nexus to get from China to Mercer,

25   Pennsylvania, and Earl Warner's home.

1          Some of the evidence in reference to that

2  interstate nexus will come in a slightly different form, and

3  it will be presented in the form of certificates of

4  authenticity from the various companies that manufactured the

5  equipment I am speaking about, along with the business record,

6  in fact, establishing that the particular item was originated

7  or manufactured in the country of China.

8          Just prior to the execution of the search warrant

9  on April 3rd, 2012, approximately six days prior to the

10  search, Earl Warner agreed to be interviewed by Agent Carter

11  and a member of the Pennsylvania State Police at the

12  Pennsylvania State Police barracks in Mercer, Pennsylvania.

13  Agent Carter's testimony will include the statements and

14  admissions that Earl Warner made during the interview.

15          Agent Carter will tell you that Earl Warner

16  admitted that it was his hand in fact touching Faith's

17  genitalia in what I will reference as Government's

18  Exhibit 2.15.  Exhibit 2.15 is just one of the photographs

19  which in fact is referenced in Count 2 of the indictment.  I

20  am going to show you that photograph as part of my opening

21  statement.

22          Please understand that this particular image you

23  are about to see that Mr. Warner indicated he -- it is his

24  hand in this visual is very graphic.  But it is reflective of

25  the remainder of the Government's evidence that will be

1 | presented to you through the course of the trial and the

2 | witnesses.

3 | So I am going to ask Ms. Wikert if she could please

4 | pull up Exhibit No. 2.15.  I can't tell if it's up.

5 | THE DEPUTY CLERK:  It is not up yet.

6 | Okay.

7 | MS. BLOCH:  Agent Carter will also testify that

8 | Earl Warner admitted that it was his distinctive voice that is

9 | heard directing Faith in the video that's charged at Count 6.

10 | So for purposes of my opening today, I have asked Ms. Wikert

11 | if she would play a small piece of that video, Government's

12 | Exhibit 6.1, that Mr. Warner identified his voice in.

13 | (Video played, but not recorded stenographically.)

14 | MS. BLOCH:  At the end of the trial the Judge will

15 | instruct you on the applicable law that is the law that

16 | applies to this case.  But as the Judge has already mentioned,

17 | the facts of this case are for you, the jurors, to decide.

18 | The Government asks that you do so obviously using your

19 | fairness, your sense of reasonableness, and most importantly

20 | your common sense.

21 | The Government asks that you listen closely to the

22 | testimony that will be presented over the course of the next

23 | couple of days and carefully observe the evidence that's

24 | admitted.  After all of the evidence is presented, both myself

25 | and Mr. Chontos will have another opportunity to speak to you.

1    I will go through some of that evidence with you again and I

2    will ask you at that point to return a verdict of guilty on

3    all seven charges.

4                Thank you very much.

5                THE COURT:  Would you like to open now or wait?

6                MR. CHONTOS:  I will open now, Judge, thank you.

7                THE COURT:  You may do so.

8                MR. CHONTOS:  Ms. Bloch.  Ladies and gentlemen of

9    the jury, my name is David Chontos, I represent Earl Warner.

10   I happen to be blessed with two kids, a 12- and a 14-year-old.

11   This summer I would come home, a group of neighborhood boys

12   down the street and my two kids are playing with those four

13   and they are having a little baseball game, three-on-three,

14   using the driveway and the street as part of the ball field.

15   I come home a little after five, stop, wind the window down.

16   My son happened to be playing that outfield position.  I said,

17   Benjamin, what's up?  He says, oh, Dad, we're just playing a

18   little game.  I said, yeah, I can see that.  What's the score?

19   He said, 8-0.  I said, wow.  Oh, Dad, we're only in the second

20   inning.  I said, okay.

21                That little baseball analogy is quite appropriate

22   here.  Because the Government presents their evidence first.

23   It's going to mount and it's going to mount and it's going to

24   mount, to use that baseball analogy, by the third inning they

25   will probably hit a couple grand slams, get into the seventh

1    or eighth inning, some more grand slams.  But we all know

2    baseball to be 27 outs, nine innings, three outs per inning.

3    The home team doesn't lose until that last out in the bottom

4    of the ninth.

5           That's what I am asking you to do.  Pay attention,

6    keep an open mind, and wait until the game -- wait until this

7    trial is over before you determine Mr. Warner's guilt or

8    innocence.  Thank you very much.

9           THE COURT:  Counsel, anything else you want to talk

10   about before I release the jury for the evening?

11          MS. BLOCH:  No, Your Honor, thank you.

12          MR. CHONTOS:  Nothing while they are present,

13   Judge.

14          THE COURT:  Again, I want to instruct you that you

15   are not supposed to talk about this case with anyone.  No one

16   should be permitted to talk to you about the case.  Until you

17   retire to the jury room at the end of the case to deliberate

18   your verdict, simply do not talk about the case.

19          Don't read about the case.  It is best not to read

20   newspapers for a couple of days.

21          Keep an open mind.  Do not form an opinion.  Don't

22   do any Internet or other research on the case.

23          Please be here early.  We won't start before 9:30,

24   but you need to be here because if one person is not here for

25   whatever reason, we all have to wait until that person comes.

1   So I just encourage you to get here early enough to make sure

2   that you have anticipated the worst weather possible.

3           Thank you for being here.

4       (Jury exits courtroom.)

5       (In open court; jury not present.)

6           THE COURT:  Anything else before we recess for the

7   evening?

8           MR. CHONTOS:  Yes, Judge.  I think it helps prevent

9   everyone, both the Court and the defense, if we can somewhat

10  have a preview maybe like of tomorrow morning's witnesses.

11          MS. BLOCH:  Mr. Chontos had asked me this

12  yesterday, I believe, and I had indicated that I didn't really

13  feel that, given the abundance of pretrial discovery in this

14  case, exhibit lists, the binders and everything else, that it

15  was fair to ask me, with having the Jencks material for a very

16  long time, the order of my witnesses and I don't want to have

17  to adhere to it.

18          With that said, he knows who my witnesses are, and

19  that's where I would prefer to leave it, Your Honor.

20          MR. CHONTOS:  Judge, I am well aware that things

21  pop up in trial where you have to take witness two --

22          THE COURT:  I was about ready to rule in your

23  favor.  Do you want to convince me otherwise now?

24          MR. CHONTOS:  No.  I am going to put the gun back

25  in my holster and not shoot my foot.

1          THE COURT:  I would appreciate it, counsel, if you

2   just meet with defense counsel afterwards and at least tell

3   him who tomorrow's witnesses are going to be so we can have an

4   orderly trial, because otherwise he certainly could say he

5   needs a break for a period of time or something like that.  So

6   I think my standing order requires disclosing by 5 o'clock one

7   day who the witnesses are going to be the next day.  So I

8   think in fairness to the Defendant that that's a good

9   procedure and I will so order.

10          Anything else?

11          MR. CHONTOS:  Nothing, Judge, thanks.

12          MS. BLOCH:  Just as a matter of attention to your

13   request at sidebar, it is the Government's intention tomorrow

14   to offer all of the images en masse that contain or arguably

15   contain child pornography.  That would be Exhibits 1.1 through

16   all of Exhibits 8.

17          THE COURT:  They will come in through your first

18   witness?

19          MS. BLOCH:  They will come in through my second

20   actually I believe.

21          THE COURT:  Okay.  We will look into the matter.

22   But unless something convinces me otherwise, at the start of

23   that presentation of evidence I will give the cautionary

24   instruction that we have discussed earlier, and following it I

25   will give the instruction again.  I think that's required and

1    could not be waived unless somebody shows me a case to the

2    contrary in light of the two Court of Appeals decisions that

3    sort of define where we currently are within this circuit.

4            Anything else?

5            MS. BLOCH:  The only other thing, Your Honor, is

6    just the logistics, and it may require that you think it

7    through over the night, but just the logistics of the various

8    video cameras that point out to counsel and to the public and

9    how to handle that during the course of the -- do we do this?

10   The agent in some ways has to see what is going on too.

11   Obviously Ms. Wikert will continue to assist me --

12           THE COURT:  I guess I am not totally getting it.

13   What is wrong with the current arrangement?

14           MS. BLOCH:  Well, all right.  Can you see this one

15   when you are sitting here?

16           THE COURT:  He can pull it a little closer to him.

17           MS. BLOCH:  All right.  This one, Ms. Tumolo and I

18   discussed it, it would probably be outside of the viewing of

19   them.  If the attorney was standing here and could see it is

20   on, as long as that is okay with the Court.

21           THE COURT:  And the screen is -- whoever is in the

22   witness box obviously is able to see what's being shown.

23           MS. BLOCH:  Yes, they will be able to see.

24           THE COURT:  Anything else on behalf of the

25   Government?

1          MS. BLOCH:  That's all I have, Your Honor.

2          MR. CHONTOS:  We are good to go, Judge.

3          THE COURT:  Everyone should remain seated.

4  Marshals may remove the Defendant.

5          See you all tomorrow.  Try to get here at 9:15 or

6  earlier, please.  Have a safe evening.

7          (Record closed.)

8

9

10

11                    C E R T I F I C A T E

12          I, Richard T. Ford, certify that the foregoing

13  is a correct transcript from the record of proceedings in the

14  above-titled matter.

15  S/Richard T. Ford   _____

16

17

18

19

20

21

22

23

24

25